UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

_____

In re:

Case No. BT 15-01394

SERENA LOUISE LARSON,                    Chapter 7

     Debtor.

_____/

DANIEL M. McDERMOTT, UNITED STATES        Adversary Proceeding
TRUSTEE,                                  No. 15-80194

     Plaintiff,

v.

SERENA LOUISE LARSON,

     Defendant.

_____/

**OPINION GRANTING UNITED STATES TRUSTEE'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Appearances:

Michelle M. Wilson, Esq., Grand Rapids, Michigan, attorney for Daniel M. McDermott,
    United States Trustee.

Michael P. Corcoran, Esq., Traverse City, Michigan, attorney for Serena Louise Larson
    (the "Debtor").

I.       INTRODUCTION and JURISDICTION.

This matter is before the court on the motion for partial summary judgment filed by

the United States Trustee ("UST") in this adversary proceeding.  (AP Dkt. No. 22.)  The

UST's complaint seeks revocation of the Debtor's discharge under § 727(d)(1) of the

Bankruptcy Code[1] due to the Debtor's alleged concealment of a pending sale of her residence, for a price that was much higher than the value of the property disclosed in her bankruptcy schedules.  The motion for partial summary judgment raises one discrete issue:  whether the chapter 7 trustee's knowledge of the Debtor's alleged fraud in connection with the potential sale should be imputed to the UST for purposes of § 727(d)(1).

The court has jurisdiction over this bankruptcy case.  28 U.S.C. § 1334.  The bankruptcy case and all related proceedings have been referred to this court for decision.  28 U.S.C. § 157(a); L. Civ. R. 83.2(a) (W.D. Mich.).  This revocation of discharge action is a statutory core proceeding.  28 U.S.C. § 157(b)(2)(J).  Both parties have consented to this court entering a final order in this adversary proceeding.  (UST's Complaint, AP Dkt. No. 1 at ¶ 3; Debtor's Answer, AP Dkt. No. 5 at ¶ 3.)

## II.    FACTS.

The facts that are material to the UST's motion for partial summary judgment are not disputed.  On March 12, 2015, the Debtor filed a voluntary chapter 7 petition.  (Dkt. No. 1.)  The Debtor also filed her bankruptcy schedules and statement of financial affairs on March 12, 2015.  (Id.)

Kelly M. Hagan (hereafter "Trustee") was appointed as the chapter 7 trustee in the Debtor's bankruptcy case.  The Trustee has served on the panel of chapter 7 trustees in the Western District of Michigan since 2004.  (Affidavit of Kelly M. Hagan, attached as

---

[1]    The Bankruptcy Code is set forth in 11 U.S.C. §§ 101-1532 inclusive.  Specific provisions of the Bankruptcy Code are referred to in this opinion as "§ ___."

Exh. 1 to UST's Motion for Partial Summary Judgment, AP Dkt. No. 22, at ¶ 2.)  The

Trustee is not an employee of the UST Program.  (Hagan Affidavit, at ¶ 3.)  Instead, the

UST asserts in its Motion that the Trustee is an "independent contractor" with the U.S.

Department of Justice.  The Trustee agrees.[2]  (Hagan Affidavit, at ¶ 4.)  The Debtor denies

this characterization as an "unsupported legal conclusion."  (Debtor's Response to UST's

Motion for Partial Summary Judgment, AP Dkt. No. 25, at ¶ 13.)

A § 341 meeting was held in the Debtor's case on May 5, 2015.  (Dkt. No. 7.)  The

Debtor appeared and testified under oath at the meeting.

On July 6, 2015, the Trustee received an email from Kelly S. Miehlke, an escrow

agent for Capital Title Insurance Agency, regarding an upcoming sale of the Debtor's

home. (Hagan Affidavit, at ¶ 7.)  This email correspondence was the first time the Trustee

learned of the pending sale of the Debtor's residence.  (Id. at ¶ 8.)  On July 7, 2015, the

Trustee contacted Robert Weisbrodt, a realtor, about the pending sale.  (Id. at ¶ 9.)  Mr.

Weisbrodt informed the Trustee of the details of the sale, including the list price, the date

of the listing agreement, and the proposed sale price.  (Id. at ¶ 10.)

On July 13, 2015, the Debtor received her chapter 7 discharge.  (Dkt. No. 11.)  On

July 28, 2015, the Trustee informed Michelle M. Wilson, trial attorney for the Office of the

United States Trustee, of the pending sale of the Debtor's home via email.  (Id. at ¶ 11.)

Both the Trustee and Ms. Wilson have represented that this email was the first time the

UST was advised of the pending sale or of the other facts that lead to the UST's complaint

to revoke the Debtor's discharge.  (Hagan Affidavit, at ¶ 12; Affidavit of Michelle M.

---

[2]     As further support for these statements, the Trustee asserts that the UST does
not have access to her email or voicemail.  (Hagan Affidavit, at ¶ 13.)

Wilson, attached as Exh. 2 to UST's Motion for Partial Summary Judgment, AP Dkt. No. 22, at ¶ 4 & 5.)  In her response to the UST's motion, the Debtor admits that the July 28, 2015, email was the first time the UST learned of the proposed sale of the Debtor's residence, and that prior to that time, the UST had not learned of any of the facts giving rise to the adversary complaint in this proceeding from any other source.  (Debtor's Response to UST's Motion for Partial Summary Judgment, AP Dkt. No. 25, at ¶ 15 & 16.)

On July 28, 2015, the UST filed a complaint to revoke the Debtor's discharge.  The UST's motion for partial summary judgment was filed on February 10, 2016.  A hearing was held on March 17, 2016, in Traverse City, Michigan.  At the conclusion of the hearing the court took the motion under advisement.

### III.    DISCUSSION.

A. Summary Judgment Standard.

Bankruptcy Rule 7056, which incorporates Federal Rule of Civil Procedure 56, governs motions for summary judgment or partial summary judgment in bankruptcy adversary proceedings.  The relevant portion of the rule states that:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56(a)).  When considering a motion for summary judgment, the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).

The moving party has the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Upon making this showing, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (citation omitted). All facts and related inferences are to be viewed in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255, 106 S. Ct. at 2513. However, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356; see also Fed. R. Civ. P. 56(c)(1) (requiring parties to cite "particular parts of materials in the record" to support their factual assertions); Fed. R. Civ. P. 56(e) (stating effect of failure to properly address opposing party's assertions of fact). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

B. § 727(d)(1).

Section 727(d)(1) provides that:

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection [727(a)] if . . . such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.

11 U.S.C. § 727(d)(1). The UST's motion for partial summary judgment pertains to the second requirement set forth in the statute, i.e., whether the UST lacked knowledge of the Debtor's alleged fraud until after entry of the discharge. For purposes of § 727(d)(1),

"knowledge" of the fraud exists "when the party seeking revocation first becomes aware of facts such that he [or she] is put on notice of a possible fraud." Murrietta v. Fehrs (In re Fehrs), 391 B.R. 53, 80 (Bankr. D. Id. 2008) (citation omitted).  As the party requesting revocation of the Debtor's discharge, the UST bears the burden of proving its lack of knowledge.  Id. (citing 6 Collier on Bankruptcy ¶ 727.15[3] at 727-76).  In this adversary proceeding, it is undisputed that the UST did not have actual knowledge of the proposed sale of the Debtor's home and the other facts giving rise to its complaint to revoke the Debtor's discharge until after the discharge had been granted.  The Debtor argues, however, that the Trustee's knowledge of the sale, which was obtained through email correspondence prior to the entry of the Debtor's discharge, should be imputed to the UST.  Accordingly, the sole issue presented by the UST's motion for partial summary judgment is whether the Trustee's knowledge of the sale, in her role as chapter 7 trustee, may be imputed to the UST for purposes of § 727(d)(1).  For the following reasons, the court finds that it may not.

   1.  *Plain Language of Statute and Legislative History.*

First, there is nothing in the plain language of § 727(d)(1) that suggests the knowledge of one party may be imputed to another.  Section 727(d)(1) gives three distinct types of entities – the trustee, creditors, and the United States trustee – the right to request revocation of a debtor's discharge. By designating the panel trustee and the UST separately, the statute suggests a clear intent to give either party the right to seek revocation of a debtor's discharge.  In other contexts, the Supreme Court has held that when the language of a statute is plain, and "'names the parties granted the right to invoke its provisions'" it is appropriate for courts to presume that such parties, and only such

parties, may act.  Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 11, 120 S. Ct. 1942, 1950 (2000) (holding that the trustee, as the sole party named in the statute, is the only party empowered to seek recovery under § 506(c)) (citing United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S. Ct. 1026 (1989) and quoting 2A N. Singer, Sutherland on Statutory Construction § 47.23, p. 217 (5th ed. 1992)) (additional citations omitted).

The statute then limits each party's right to request revocation of the discharge to the extent that "the requesting party" knew of the debtor's alleged fraud prior to the entry of the discharge.  A natural reading of this section suggests that this limitation on a party's ability to seek revocation of the discharge should apply only to the extent *that party* had knowledge of the debtor's alleged fraud.  See Gargula v. Lombard (In re Lombard), 446 B.R. 344, 348 n.9 (Bankr. W.D. Mo. 2010) (stating, in dicta, that "the plain language of § 727(d)(1) appears to preclude the imputation of knowledge between the UST and a panel trustee").

These conclusions are also supported by the legislative history of § 727(d)(1).  The United States Trustee Program was first established as a pilot program by the Bankruptcy Reform Act of 1978 to "aid in the administration of bankruptcy cases, a task which the courts had previously performed."  See Joelson v. United States, 86 F.3d 1413, 1415 (6th Cir. 1996) (citing In re Revco D.S., Inc., 898 F.2d 498, 500 (6th Cir. 1990)).  At that time, only the "trustee or a creditor" was authorized to seek revocation of discharge under § 727(d)(1).  See Pub. L. No. 95-598, 92 Stat. 2549, sec. 727 (1978).  With the passage of the Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986, Congress expanded the UST program on a nationwide basis and made it

permanent.  See Joelson, 86 F.3d at 1415.  The 1986 Act also amended § 727(d)(1) to add the UST as a party who could request revocation of a debtor's chapter 7 discharge. See Pub. L. No. 99-554, 100 Stat. 3088, sec. 220 (1986).  The House Report states that this amendment was intended "to make it clear that the U.S. Trustee may object to the granting of a discharge and may request the court to revoke a discharge."  H.R. Rep. No. 99-764, at 28 (1986), reprinted in 1986 U.S.C.C.A.N. 5227, at 5240-41.  The legislative history thus reflects Congress's intent to give the UST the ability to seek revocation of a debtor's discharge separate and apart from the panel trustee's ability to do so.  Likewise, there is no suggestion in the legislative history that knowledge of a debtor's alleged fraud should be imputed from the panel trustee to the UST.

   2.   *Is the Chapter 7 Trustee an Agent of the United States Trustee?*

   Notwithstanding their separate designations in the statute, the Debtor argues that the Trustee had knowledge of the Debtor's alleged fraud prior to entry of the discharge and that this knowledge should be imputed to the UST under common law theories of agency.[3]  Under Michigan law, an agent's authority may be actual or apparent.  Mais v.

---

[3]      In her brief in response to the UST's motion for partial summary judgment, the Debtor cites federal and state law "considerations" in support of her agency argument. However, the only law she cites regarding the requirements for establishing a principal-agent relationship are cases decided under Michigan law. As a result, the court has also analyzed the Debtor's agency argument under Michigan law. The court notes, however, that the outcome would be the same if federal common law rules of agency were applied. See, e.g., Moriarty v. Glueckert Funeral Home, Ltd., 155 F.3d 859, 865-66 (7th Cir. 1998) (under federal law, "actual authority 'to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him to act on the principal's account'") (citing Restatement (Second) of Agency §§ 7-8, 26); Anderson v. International Union, United Plant Guard Workers of America, 150 F.3d 590, 593 (6th Cir. 1998) (apparent authority under federal law "(1) results from a manifestation by a person that another is his agent, regardless of whether an actual agency relationship has been formed and (2) exists only to the extent that it is reasonable for the third person dealing with the agent to believe that

Allianz Life Ins. Co. of N. Am., 34 F. Supp.3d 754, 762 (W.D. Mich. 2014).  Actual authority exists when "the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent" to act on its behalf.  Id. (citing Restatement (Third) of Agency § 2.01 (2006)).  Apparent authority may exist when "a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."  Id. (citing Restatement (Third) of Agency § 2.03 (2006)).  Generally, an important factor in determining the existence of an agency relationship is "whether the principal has the right to control the actions of the agent."  Id. (citation omitted).

Many of the facts that are material to the determination of whether the Trustee should be considered the UST's agent under § 727(d)(1) are evident from the respective obligations and duties of the UST and panel trustees under the governing statutes.  Not surprisingly, both the UST and the Debtor have focused their arguments on this statutory framework.[4]  In particular, the Debtor emphasizes the UST's "control over the panel

---

the agent is authorized") (citing Restatement (Second) of Agency §§ 8, 27 & cmts. thereto).

[4]       In addition to their statutory arguments, both parties attempt to identify, as a factual matter, the appropriate label to attach to the relationship between the UST and the Trustee.  The UST's motion alleges that the Trustee is not an "employee" of the UST and is an "independent contractor."  The characterization of the Trustee as an "independent contractor" is supported by the Trustee's affidavit.  The Debtor admits, in her response to the UST's motion, that the Trustee is not an "employee" of the UST, but denies that she is an "independent contractor."
         The court questions the relevance of such labels to the present issue.  See Restatement (Third) of Agency § 1.02 ("An agency relationship arises only when the elements stated in § 1.01 [Agency Defined] are present.  Whether a relationship is characterized as agency in an agreement between the parties or in the context of industry or popular usage is not controlling."); United States v. Hudson, 491 F.3d 590, 595 (6th Cir. 2007) ("As a matter of legal custom and tradition, . . . nothing about the title independent contractor invariably precludes someone from being an agent under

trustee's job performance" as indicative of an agency relationship.  The court has carefully considered these arguments, but concludes that there is no agency relationship between the UST and the panel trustee for purposes of imputing knowledge of the Debtor's alleged fraud under § 727(d)(1).

The UST and panel trustee serve different functions in the bankruptcy system. Panel trustee are the legal representatives and fiduciaries of a debtor's bankruptcy estate. See 11 U.S.C. § 323; In re MQVP, Inc., 477 F. App'x 310, 314 (6th Cir. Apr. 13, 2012) (unpublished decision) (noting in the context of approving a settlement agreement, that a bankruptcy trustee owes "'fiduciary obligations to the estate and its myriad interests'") (quoting In re Big Rivers Elec. Corp., 355 F.3d 415, 440 (6th Cir. 2004); In re AFI Holding, Inc., 530 F.3d 832, 844 (9th Cir. 2008), aff'g and adopting, 355 B.R. 139 (9th Cir. B.A.P. 2006).   The duties of a chapter 7 trustee include marshalling assets and managing and disposing of the estate's property.  11 U.S.C. § 704; see Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 352, 105 S. Ct. 1986, 1992-93 (1985) (explaining that "[t]he powers and duties of a bankruptcy trustee are extensive" and include "the duty to maximize the value of the estate").[5]

---

appropriate circumstances.") (citing Restatement (Second) of Agency § 2(3) ("An independent contractor . . . may or may not be an agent.")).  To the extent such distinctions are relevant, the court notes that the Debtor has not supported her denial of the UST's characterization of the Trustee's status as an "independent contractor" with any specific factual allegations as required under Fed. R. Civ. P. 56(e).

[5]      The panel trustee here fulfilled her duties by immediately contacting the realtor to assess the status of the proposed sale and whether it may be beneficial to the bankruptcy estate.  The Trustee's actions resulted in this court approving her settlement with the Debtor concerning the sales proceeds being paid to the estate for the benefit of creditors. (Dkt. No. 37.)  The Trustee informed the UST of the alleged fraud in the ordinary course of business.

The UST, by contrast, plays a supervisory role in the bankruptcy system, acting as a "watchdog over the bankruptcy process."  See H.R. Rep. No. 95-595, at 88 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, at 5966, 6049; In re Revco D.S., Inc., 898 F.2d 498, 500 (6th Cir. 1990) (explaining that the UST is responsible for "protecting the public interest and ensuring that bankruptcy cases are conducted according to law").  The UST's duties include appointing panel trustees and supervising private trustees in their administration of chapter 7 cases.  See 28 U.S.C. § 586(a)(1) & (3).  According to the Handbook for Chapter 7 Trustees, the UST's goal in chapter 7 cases is "to establish a system of oversight that will allow for the complete, economical, equitable and expeditious administration of cases, while allowing the trustee to exercise appropriate business and professional judgment in performing the trustee's fiduciary duties."  United States Dept. of Justice, Handbook for Chapter 7 Trustees § 6, at p. 6-1 (Oct. 2012), https://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-7-handbooks-reference-materials (herein "Handbook for Chapter 7 Trustees").  However, contrary to the Debtor's assertion, the UST's supervisory powers are not "unfettered."  For example, prior to terminating a trustee from the panel of standing trustees, or ceasing to assign a trustee cases, certain procedural requirements must be met.  See 28 C.F.R. § 58.6 (which provides trustees with the ability to seek agency review of the UST's intent to suspend or terminate the assignment of cases, or to not renew the trustee's term assignment); 28 U.S.C. § 586(d)(2) (which authorizes a trustee to seek judicial review of such agency actions).[6]  Many of the other "remedial actions" available to the UST in the

---

[6]     In support of her assertion that the UST has "unfettered authority to remove trustees" the Debtor cites Joelson v. United States, 86 F.3d 1413 (6th Cir. 1996). However, 28 U.S.C. § 586(d) was amended by the Bankruptcy Abuse Prevention and

exercise of its supervisory role over panel trustees also involve filing motions or objections with the bankruptcy court or referral of matters to other agencies.  See Handbook for Chapter 7 Trustees § 6.D.1, at p. 6-4 (suggesting that appropriate remedial actions for "inadequate trustee performance" or "dishonesty, deceit [or] fraud" may include the filing of motions to compel, motions for turnover of books and records, objections to compensation, requests for restraining orders, or referral to law enforcement and state licensing authorities).  Although the UST exercises trustee oversight, the court concludes that the UST does not exercise control over private trustees that is sufficient to create an agency relationship.

As further support for her agency argument, the Debtor notes that the panel trustee "performs the duties" of the UST by conducting the first meeting of creditors under § 341. The UST acknowledges that the chapter 7 trustee may serve as a "designee" of the UST under the Bankruptcy Code and Rules and that the UST routinely designates its duty to convene and preside over the § 341 meeting to the panel trustee.  See 11 U.S.C. § 341(a) (stating that "the United States trustee shall convene and preside at" the meeting of creditors); 11 U.S.C. § 102(9) (under the Bankruptcy Code, the term "'United States trustee' includes a designee of the United States trustee"); Fed. R. Bankr. P. 9001(12) (under the Bankruptcy Rules, "'United States trustee' includes an assistant United States trustee and any designee of the United States trustee"); see also United States Dept. of Justice, United States Trustee Program Policy & Practices Manual, Vol. 2, § 2-2.2.1 (Feb.

---

Consumer Protection Act ("BAPCPA") of 2005 "to establish a series of procedural protections for chapter 7 and chapter 13 trustees concerning final agency decisions relating to trustee appointments and future case assignments."  See H.R. Rep. No 109-31, at 147 (2005), reprinted in 2005 U.S.C.C.A.N. 88, at 206.  Joelson was decided well before the BAPCPA amendments, and is distinguishable on that basis.

2015), http://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual (herein "UST Manual"); Handbook for Chapter 7 Trustees, § 3.D.1, at 3-4. The UST argues, however, that presiding at the meeting of creditors is the only instance in which a panel trustee serves as the designee of the UST. The Debtor has not disputed that assertion. This court concludes that the limited designation of the UST's duty to preside at the § 341 meeting does not manifest an overall intent for the panel trustee to act on the UST's behalf in all instances and does not establish a general basis for imputing a panel trustee's knowledge to the UST. Even in the context of information that was, or should have been, disclosed to a chapter 7 trustee during a § 341 meeting, this court has previously held that such information was not sufficient to give the UST knowledge of the debtor's fraud for purposes of § 727(d)(1). U.S. Trustee v. Langley (In re Langley), Adv. Pro. 12-80187, Dkt. No. 44 at 9 & n. 5 (Mar. 29, 2013). The Langley decision is persuasive and well-reasoned. In the present case, the knowledge of the pending sale of the Debtor's home that the Debtor seeks to impute from the chapter 7 trustee to the UST was not acquired by the Trustee at the § 341 meeting, but instead became known to the Trustee in subsequent email exchanges. Accordingly, even if this court were to accept the Debtor's argument that the Trustee was the UST's agent for purposes of the § 341 meeting by virtue of her status as the UST's designee, that holding would be of no consequence because the information concerning the Debtor's alleged fraud in this case was disclosed to the Trustee after the § 341 meeting was concluded.

Finally, the primary bankruptcy case cited by the Debtor in support of her assertion that knowledge may be imputed from a panel trustee to the UST based on agency principles is U.S. Trustee v. Halishak (In re Halishak), 324 B.R. 641 (Bankr. N.D. Ohio

2005).  In Halishak, the court applied Ohio agency law and held that the UST could be imputed with knowledge that the chapter 7 trustee had abandoned certain real property that was the subject to settlement negotiations between the UST and the debtor.  Halishak is easily distinguishable from the case currently before the court.  Most importantly, the abandonment in Halishak was part of the record in the bankruptcy case.  At the hearing on the UST's motion for summary judgment, the attorney for the UST admitted that the UST may be imputed with knowledge of matters that are reflected on the court's docket when the Office or one of its attorneys has appeared in the case.  Here, the Trustee's knowledge of the Debtor's alleged fraud was not reflected on the court's docket and may not be imputed to the UST on that basis.

For these reasons, the court rejects the Debtor's arguments that the statutory relationship between the UST and the Trustee establishes an agency relationship for purposes of § 727(d)(1).  Nothing in the statutory framework indicates that such a relationship exists.  The Debtor has not offered any other evidence to overcome this conclusion or to establish that there are material factual questions on this issue.  She has not alleged any specific facts showing that the UST has manifested an intent for the panel trustee to act as its agent in this particular case, or in pursing objections to discharge in general.  Likewise, the Debtor has offered no specific facts or other evidence to show that she reasonably believed, based on the UST's manifestations, the Trustee was acting as the UST's agent in this case.  As a result, there are no genuine issues of material fact on the agency issue, and the UST is entitled to judgment on this discrete issue as a matter of law.

### 3. The Debtor's Finality Arguments.

Finally, the Debtor argues that if the court fails to impute the Trustee's knowledge to the UST and allows the UST to pursue revocation of the Debtor's discharge at this time, the UST will get a "second bite at the apple" in a way that "subverts the process and renders the Debtor's discharge a 'provisional' order subject to the whim of the UST." (Debtor's Response to UST's Motion for Partial Summary Judgment, AP Dkt. No. 25, at p. 7.)  However, by permitting revocation of a debtor's discharge in certain circumstances, § 727(d), by its very nature, renders the discharge somewhat "provisional."  As one court has noted, "the public policy against piecemeal litigation of matters essential to completion of a bankruptcy case does not apply to Section 727(d) actions, which obviously come after a discharge had been given and the action concluded.  The policy in vindicating the issues inherent in a discharge action outweighs the costs associated with continuing litigation." The Cadle Co. v. Reed, 392 B.R. 675, 682-83 (N.D. Tex. 2008).

The Debtor also asserts that failure to impute the panel trustee's knowledge to the UST could result in improper relitigation of discharge revocation issues, if the panel trustee is unsuccessful under § 727(d)(1) and the UST later brings the same claims. Because the Debtor has not alleged that this, or any other intentional wrongdoing, occurred in this case, the Debtor's concerns on this point are entirely speculative.  To the extent the potential for such abuse exists in future, hypothetical cases, the court notes that there are practical, legal, and procedural considerations that might apply to curb such actions. See In re Fehrs, 391 B.R. at 80 (explaining that after a party is put on notice of a debtor's potential fraud, courts have imposed a general requirement that such party show "due diligence in investigating and responding" to such conduct) (citing Neary v.

<u>Darby (In re Darby)</u>, 376 B.R. 534, 542-43 (Bankr. E.D. Tex. 2007)); <u>In re Paige</u>, 411 B.R. 319 (Bankr. N.D. Tex. 2008) (discussing the application of issue and claim preclusion against non-parties in the context of § 727(d)).  In light of the language and purpose of § 727(d), imputation of knowledge from the panel trustee to other parties, including the UST, is not the appropriate means for addressing the hypothetical concerns raised by the Debtor in this case.

IV.   <u>CONCLUSION</u>.

Based on the undisputed facts in this adversary proceeding, the court finds that the UST did not have actual knowledge of the proposed sale of the Debtor's residence, or any other facts giving rise to its complaint to revoke the Debtor's discharge, until after the discharge was entered.  For the reasons set forth herein, the court further concludes that the panel trustee's knowledge of the Debtor's alleged fraud may not be imputed to the UST.  Accordingly, the UST's motion for partial summary judgment shall be granted. The court will prepare and enter a separate order.  A subsequent pretrial conference will also be scheduled.

**IT IS SO ORDERED.**

**Dated June 20, 2016**

 

James W. Boyd
United States Bankruptcy Judge